UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

*In re* Broadwing, Inc.              Case No. 1:02-cv-00857
ERISA Litigation                  Judge Michael H. Watson

## OPINION AND ORDER
## APPROVING CLASS SETTLEMENT, CERTIFYING CLASS, AWARDING ATTORNEYS' FEES AND COSTS, AND GRANTING INCENTIVE PAYMENTS TO CLASS REPRESENTATIVES

Plaintiffs bring this class action lawsuit under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 *et seq.,* asserting, *inter alia*, Defendants breached ERISA-mandated fiduciary duties owed to Plaintiffs.  The parties reached a Stipulation of Agreement of Settlement on February 22, 2006.  This matter is now before the Court on Plaintiffs' Motion for Final Approval of Proposed Settlement and Final Certification of the Class (Doc. 115-1), and Plaintiffs' Motion for Order Awarding Attorneys' Fees and Costs and Incentive Payments to Class Representatives (Doc. 110).

### I. Approval of Proposed Class Settlement

This Court recognizes that settlement of class actions is generally favored and encouraged.  *Franks v. Kroger Co.*, 649 F.2d 1216, 1224 (6th Cir. 1981).  Nonetheless, "[c]lass actions are unique creatures with enormous potential for good and evil." *Johnson v. General Motors Corp.*, 598 F.2d 432, 439 (6th Cir. 1979) (Fay, J., concurring).  One such evil the court must guard against is a collusive tradeoff of a large award of attorney fees for class counsel in return for a small settlement for the class and a release of claims.  *See, e.g., Schwartz v. Dallas Cowboys Football Club,*

class and a release of claims. *See, e.g.*, *Schwartz v. Dallas Cowboys Football Club, Ltd.*, 157 F. Supp. 2d 561, 578-80 (E.D. Pa. 2001); *Polar Int'l Brokerage Corp. v. Reeve*, 187 F.R.D. 108, 118-19 (S.D.N.Y. 1999). In recognition of this, Fed. R. Civ. P. 23(e) provides important protections for class members, including the named plaintiffs, whose rights may not have been given due regard by the negotiating parties. *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 624 (9th Cir. 1982), *cert. denied,* 459 U.S. 1217 (1983). To this end, Rule 23(e) requires three steps for the approval of a proposed class action settlement:

1. The Court must preliminarily approve the proposed settlement;

2. Members of the class must be given notice of the proposed settlement; and

3. A fairness hearing must be held, after which the court must determine whether the proposed settlement is fair, reasonable and adequate.

Fed. R. Civ. P. 23(e); *Williams v. Vukovich*, 720 F.2d 909, 920-21 (6th Cir. 1983); *Bronson v. Bd. of Educ.*, 604 F. Supp. 68, 71 (S.D. Ohio 1984). In the instant case, the first two steps have been satisfied. This Court has preliminarily approved the proposed Settlement. In addition, the class was given notice of the proposed Settlement, and the Court finds that the notice was the best notice practicable under the circumstances. In addition, the Court conducted a fairness hearing on June 22, 2006. Thus, it only remains for this Court to decide whether the Settlement is fair, reasonable and adequate. Fed. R. Civ. P. 23(e)(1)(C).

The determination of whether a proposed class settlement is fair, reasonable and adequate requires the Court to consider and balance several factors, which include:

1.  Plaintiffs' likelihood of ultimate success on the merits balanced against the
    amount and form of relief offered in settlement;

2.  The complexity, expense and likely duration of the litigation;

3.  The stage of the proceedings and the amount of discovery completed;

4.  The judgment of experienced trial counsel;

5.  The nature of the negotiations;

6.  The objections raised by the class members; and

7.  The public interest.

*In re Telectronics Pacing Syss. Inc.*, 137 F. Supp. 2d 985, 1009 (S.D. Ohio 2001);

*Enter. Energy Corp. v. Columbia Gas Transmission Corp.,* 137 F.R.D. 240, 245 (S.D.

Ohio 1991); *Bronson*, 604 F. Supp. at 74-82. In the end, the Court's determinations are

no more than "'an amalgam of delicate balancing, gross approximations and rough

justice.'" *Officers for Justice*, 688 F.2d at 625 *(*quoting *City of Detroit v. Grinnell*, 495

F.2d 448, 468 (2d Cir. 1974)).

### A. Likelihood of Ultimate Success on the Merits Balanced Against the Amount and Form of Relief Offered in the Settlement

#### 1. The Likelihood of Ultimate Success on the Merits

"The most important of the factors to be considered in reviewing a settlement is

the probability of success on the merits." *In re General Tire & Rubber Co. Sec. Litig.*,

726 F.2d 1075, 1086 (6th Cir. 1984). Several district court decisions favor the

possibility of establishing liability in cases alleging fiduciary breaches concerning

holdings of risky company stock in individual retirement accounts;[1] however, few of these cases reached the stage of a decision based on the merits. As a result, little authority supports the theories that are fundamental to Plaintiffs' claims. Moreover, if litigation were to continue, Plaintiffs would need to establish new law to overcome Defendants' defenses to liability, which include:

1.     Defendants were not the Plans' fiduciaries, or if they were, their fiduciary duties did not extend to the matters at issue in this litigation;

2.     To the extent Defendants were fiduciaries, they fully discharged all fiduciary duties imposed on them by ERISA;

3.     Even if Defendants failed to discharge one or more of their ERISA-mandated fiduciary duties, any such breach did not cause the losses alleged by Plaintiffs;

4.     Broadwing common stock was at all relevant times a prudent investment for the Plans and their participants; and

5.     The monetary relief sought by Plaintiffs is not permitted by ERISA.

Furthermore, the Class would need to rely substantially upon the testimony of expert witnesses to prove their claims. Acceptance of expert testimony is always far from certain, no matter how qualified the expert, inevitably leading to a "battle of the experts." The Settlement agreement reached by the parties avoids the risks attendant to this "battle of the experts," which could result in a ruling against Plaintiffs.

Beyond the legal obstacles Plaintiffs may encounter, each defense presents

---

[1] *See, e.g., In re Worldcom ERISA Litig.*, 263 F. Supp. 2d 745, (S.D.N.Y. 2003) (motion to dismiss denied); *In re Williams Companies ERISA Litig.*, 271 F. Supp. 2d 1328 (N.D. Okla. 2003) (motion to dismiss denied); *Rankin v. Rots*, 278 F. Supp. 2d 853 (E.D. Mich. 2003) (motion to dismiss denied); *Tittle v. Enron Corp.*, 284 F. Supp. 2d 511 (S.D. Tex. 2003) (motion to dismiss denied); *In re CMS Energy ERISA Litig.*, 312 F. Supp. 2d 898 (E.D. Mich. 2004) (motion to dismiss denied).

financial risks to the Class. Defendants are represented by experienced and competent counsel that have a larger litigation fund than Plaintiffs, which they would use to mount a zealous and thorough defense to Plaintiffs' claims. Plaintiffs, on the other hand, are individuals not funded by a corporation and have limited financial resources.

Therefore, due to the existence of uncertainties inherent in Plaintiffs' claims and resources, Plaintiffs' likelihood of success on the merits is uncertain. This factor weighs in favor of approval of the proposed Settlement.

### 2. The Amount and Form of Relief Offered in Settlement

"The determination of what constitutes a 'reasonable' settlement is not susceptible of a mathematical equation yielding a particularized sum. Rather . . . 'in any case, there is a range of reasonableness with respect to a settlement.'" *In re Michael Milken & Assocs. Sec. Litig.*, 150 F.R.D. 57, 66 (S.D.N.Y. 1993) (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d. Cir. 1972)). The court need not decide the amount of a potential recovery at trial, since the approval of the settlement should not involve a trial on the merits. *Granada Invs., Inc. v. DWG Corp.*, 823 F. Supp. 448, 453 (N.D. Ohio 1993) (citing *Maher v. Zapata Corp.*, 714 F.2d 436, 455 (5th Cir. 1983).

Here, the $11 million cash Settlement provides valuable relief to all Class Members. The cash relief will be allocated to each Class Member's account without the need for any further action taken by the Class Member's to avail themselves of the relief. Moreover, the Settlement preserves the full rights of those who may have parallel claims under security laws.

Thus, balanced against the possibility that the Class Members will receive nothing by going forward on the merits of their claims, this factor weighs in favor of

approving the proposed Settlement.

### B. Complexity, Expense and Likely Duration of the Litigation

In general, "[m]ost class actions are inherently complex and settlement avoids the costs, delays, and multitude of other problems associated with them." *In re Telectronics Pacing Syss. Inc.*, 137 F. Supp. 2d at 1013 (quoting *In re Austrian & German Bank Holocaust Litig.*, 80 F.Supp. 2d 164, 174 (S.D.N.Y. 2000)). Here, the difficulty Plaintiffs would encounter in proving their claims, the substantial litigation expenses, and a possible delay in recovery due to the appellate process, provide justifications for this Court's approval of the proposed Settlement.

ERISA-mandated fiduciary breach claims have four major components, each requiring different types of proof. First, the plaintiffs must prove that each defendant is a fiduciary; second, that each defendant breached a duty; third, that the breach has caused damage; fourth, the amount of damages that are attributable to the fiduciary breaches. These requirements may be difficult to prove because many fiduciaries did not have named fiduciary obligations regarding Plan investments. Unquestionably, organizing the proof, deposing all the fiduciaries and various professional employees performing work for the Plans, and retaining experts in fiduciary practice, would be both time consuming and expensive.

In addition, due to the legal and factual complexities, this case would be expensive to litigate and, if fully litigated, may take years to resolve. Assuming Plaintiffs' claims survive the motion to dismiss and then the summary judgment motions, trial preparation will result in the expenditure of many additional hours of effort and substantial additional expense. The trial would last several weeks and involve

numerous attorneys, experts, the introduction of voluminous documentary and deposition evidence, vigorously contested motions, and the expenditure of enormous amounts of judicial and financial resources. In complex class action litigation such as this, those expenses will burden any recovery obtained for the Class, if Plaintiffs were to succeed.

Furthermore, if the Class were to recover a judgment larger than the Settlement offer, the additional delay due to post trial motions and the appellate process could deny Class Members a recovery for years. *See e.g.*, *Chatelain v. Prudential-Bache Sec.*, 805 F. Supp. 209, 213 (S.D.N.Y. 1992). Given the time value of money, a future recovery, even one greater than the proposed Settlement, may be less valuable to the Class than receiving the benefits of the proposed Settlement now. To delay this matter further would not substantially benefit the Class. *See Brotherton v. Cleveland*, 141 F. Supp. 2d 894, 903 (S.D. Ohio 2001).

Thus, this factor also weighs in favor of approving the proposed Settlement. It secures a substantial benefit for the Class in a highly complex action, undiminished by further expenses, and without delay, costs, and uncertainty of protracted litigation.

### C. Stage of the Proceedings and the Amount of Discovery Completed

To insure that Plaintiffs have had access to sufficient information to evaluate their case and to assess the adequacy of the proposed Settlement, the stage of the proceedings and the discovery taken must be considered. *See* 137 F. Supp. 2d at 1015; *see also Kogan v. AIMCO Fox Chase, L.P.*, 193 F.R.D. 496, 502 (E.D. Mich. 2000). The proposed Settlement was reached three years after litigation commenced. During that time, both parties were involved with extensive discovery and motion

practice.

Plaintiffs' discovery included: obtaining and reviewing more than 30,000 documents related to the allegations contained in the Complaint; completing several sets of interrogatories and document requests and interrogatories; deposing Defendants' key employees that related to the Plans; retaining experts in various disciplines; and, obtaining preliminary reports in support of Plaintiffs' allegations concerning liability and economic loss. Given this extensive discovery, this Court will "defer to the judgment of experienced trial counsel who have evaluated the strengths of their case." *Kogan*, 193 F.R.D. at 501 (quoting 604 F.Supp. at 73).

In addition to the thorough discovery, Plaintiffs filed a Motion for a Class Certification on November 15, 2004. On February 6, 2005, Defendants filed a Motion to Dismiss the consolidated Complaint. Based upon the extensive briefing and the discovery completed, both parties had a "clear view of the strengths and weaknesses of their cases." *In re Warner Communications Sec. Litig.*, 798 F.2d 35, (2d Cir. 1986).

Hence, the record before this Court clearly demonstrates that both sides in this conflict have been afforded an adequate opportunity to conduct a sufficient discovery to be fully apprised about the legal and factual issues presented as well as the strengths and weaknesses of their cases. Both sides made a well-informed decision to enter into the proposed Settlement agreement. This weighs in favor of approving the proposed Settlement.

## D. Judgment of Experienced Trial Counsel

It is well settled that, in approving a class action settlement, the court "should defer to the judgment of experienced counsel who has competently evaluated the

strength of his proofs." *Williams*, 720 F.2d at 922-23. "Significantly, however, the deference afforded counsel should correspond to the amount of discovery completed and the character of the evidence uncovered." *Id.* "The court should insure that the interests of counsel and the named plaintiffs are not unjustifiably advanced at the expense of unnamed class members." *Id.* Furthermore, the court's approval is contingent upon "proof that the settlement was the product of arm's-length bargaining entered into after there had been sufficient discovery to enable counsel to act intelligently." *Stull v. Baker*, 410 F. Supp. 1326, 1332 (D.C.N.Y. 1976).

In the instant case, both Plaintiffs' and Defendants' counsel are experienced practitioners in the field of complex ERISA, class action, employment and securities litigation. Counsel for both sides urge final approval of the proposed Settlement based upon their experience, their knowledge of the strengths and weaknesses of the case, their analysis of the discovery reviewed to date, the likely recovery at trial and on appeal, and other factors considered in evaluating the proposed class action settlement. In addition, the Court determines that the proposed Settlement has been negotiated vigorously and at arm's-length by Plaintiffs and their counsel on behalf of the Plans and the Plaintiff Class. This Court further finds that, at all times, Plaintiffs acted independently and that their interests coincide with the interests of the Plans and the Plaintiff Class.

The Court also gives weight to the report filed by an Independent Fiduciary, which determined, *inter alia*, that:

1.      The Settlement is reasonable in light of the Plans' likelihood of full recovery, the risks and costs of litigation, and the value of claims foregone;

2.    The terms and conditions of the transaction are no less favorable to the Plans

      than comparable arms-length terms and condition that would have been agreed

      to by unrelated parties under similar circumstances;

3.    The transaction is not part of an agreement, arrangement or understanding

      designed to benefit a party in interest; and

4.    All terms of the Settlement are specifically described in the written Settlement

      agreement.

      Based on the foregoing, it is evident that both parties made a well-informed

decision to enter into the proposed Settlement.  Therefore, this factor weighs in favor of

approving the proposed Settlement.

## E. Nature of the Negotiations

      The Court gives significant weight to the belief of experienced counsel that the

settlement is in the best interest of the class.  137 F. Supp. 2d. at 1016 (citing *In re*

*Orthopedic Bone Screw Prod. Liab. Litig,*. 176 F.R.D. 158, 184 (E.D. Pa. 1997).

Initially, however, the court should determine whether the settlement was non-collusive

and ask was it reached through arms-length negotiations. *Id.*

      In the case at bar, the proposed Settlement was negotiated in an adversarial

manner after substantial factual investigation, intensive legal analysis and expert

investigation and consultation.  The proposed Settlement negotiations included several

face-to-face meetings as well as numerous telephone conferences.  Both parties to the

negotiations vigorously attempted to secure the most desirable conclusion for their

respective clients.  Settlement proposal documents were exchanged back and forth

between the parties on numerous occasions in an attempt to resolve the key issues

relative to the proposed Settlement. This process resulted in a fair, reasonable and adequate Settlement. *See TGB, Inc. v. Bendis*, 811 F. Supp. 596, 605 (D. Kan. 1992) (finding a settlement fair in the absence of collusion where the settlement was the result of arm's length negotiations that were hard fought).

As a result, the Court concludes that the proposed Settlement was reached in good faith. This factor weighs in favor of approving the proposed Settlement.

### F. Objections Raised by the Class Members

In considering a class action settlement, the Court should look to the reaction of the class members. 141 F. Supp. 2d at 906. Of course, "[t]he fact that some class members object to the settlement does not by itself prevent the court from approving the agreement." *Id.* Rather, "[t]he small number of objectors is a good indication of the fairness of the settlement." *Whitford v. First Nationwide Bank*, 147 F.R.D. 135, 141 (W.D. Ky. 1992) (citing *Laskey v. Int'l Union*, 638 F.2d 954 (6th Cir. 1981).

Here, there are over 5,000 Class Members, all of which were sent a mailed notice of the Settlement at their last known address. Of those, no Class Member objected to the Settlement. As such, the Class reaction indicates the Class supports the Settlement. *See Whitford*, 147 F.R.D. at 141 (stating that a small number of objectors is a good indication of the fairness of the Settlement). In sum, the proposed Settlement enjoys the unanimous support of the Class Members who received notice. This factor weighs in favor of approving the proposed Settlement.

### G. Public Interest

The Court notes that the public interest favors approval of the proposed Settlement. *See Franks*, 649 F.2d at 1224. While this case is not of general public

interest, there is certainly a public interest in settlement of disputed cases that require substantial federal judicial resources to supervise and resolve. In the instant case, the proposed Settlement ends potentially long and protracted litigation and frees the Court's valuable judicial resources. 137 F. Supp. 2d at 1025; *In re Dun & Bradstreet Credit Servs. Customer Litig.*, 130 F.R.D. 366, 372 (S.D. Ohio 1990). The Court concludes that this factor weighs in favor of approving the proposed Settlement because the public interest is served by resolution of this action.

## II. Class Certification

The benefits of a settlement can be realized only through the final certification of a settlement class. However, the court maintains broad discretion in deciding whether to certify a class. *See Amchem Prods., Inc. v. Windsor Prods.*, 521 U.S. 591 (1997). The judicial landscape in cases involving alleged violations of fiduciary duties under ERISA, favors class certification appropriate under Fed. R. Civ. P. 23. *See, e.g.*, *Rankin v. Rots*, 220 F.R.D. 511 (E.D. Mich. 2004); *Thomas. v. SmithKline Beecham Corp.*, 201 F.R.D. 386, 397-98 (E.D. Pa. 2001) (granting class certification of ERISA breach of fiduciary claims under Subsections (b)(1) and (b)(2)). As these authorities teach, plan-wide claims against ERISA fiduciaries are textbook examples of proper class certification. As such, the proposed class satisfies each requirement of Rule 23(a), (b)(1) and (b)(2).

## A. Rule 23(a) Requirements

The four requirements of Rule 23(a), numerosity, commonality, typicality and adequacy are well recognized and defined by the courts. *See Senter v. General Motors Corp.*, 532 F.2d 511, 522 (6th Cir. 1976). As demonstrated below, these four

requirements are satisfied in this action.

### 1. Numerosity

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." This requirement is not amenable to a strict numerical test. *In re Am. Med. Syss., Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996). The court must examine this factor in light of the specific facts of the case. *Id.* Nonetheless, common sense dictates that at some point numbers alone will satisfy the numerosity requirement. *Id.*

In the instant case, class notice was sent to over 5,000 participants in the Plans, which included almost all of Cincinnati Bell employees who worked for Broadwing and/or Cincinnati Bell during the class period from November 9, 1999 through February 28, 2003. Therefore, there is no question that the class is so numerous that joinder of all members would be impracticable. Thus, numerosity is present.

### 2. Commonality

Rule 23(a)(2) requires "questions of law or fact common to the class." This requirement is interdependent with the impracticability of the joinder requirement. *Id.* at 1080. Together, these tests form the conceptual basis for class actions. *Id.*

> The class-action was designed as an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only. Class relief is peculiarly appropriate when the issues involved are common to the class as a whole and when they turn on questions of law applicable in the same manner to each member of the class. For in such cases, the class-action device saves the resources of both the courts and the parties by permitting an issue potentially affecting every class member to be litigated in an economical fashion under Rule 23.

*Id.* (quoting *General Telephone v. Falcon*, 457 U.S. 147, 155 (1982) (internal cites and quotes omitted)). The commonality test is qualitative. *Id.* (quoting 1 Herbert B.

Newberg & Alba Conte, *Newberg on Class Actions*, § 3.10 at 3-50). Hence, a single issue common to all members of the class satisfies the requirement. *Id.*

Not every common question satisfies the commonality requirement; at some point of generality and abstraction almost any set of claims exhibits commonality. *Sprague v. General Motors Corp.*, 133 F.3d 388, 397 (6th Cir. 1998) (*en banc*). Rather, to satisfy Rule 23(a)(2), the case must present a common issue the resolution of which will advance the litigation. *Id.*

Here, each Class Member's claim raises questions of law or fact that are common to the class. In general, determining Defendants' liability for ERISA violations is common to all Class Members because a breach of fiduciary duty affects all participants and beneficiaries. *Banyai v. Mazur*, 205 F.R.D. 160, 163 (S.D.N.Y. 2002); *cf. In re IKON Office Solutions, Inc. Secs. Litig.*, 191 F.R.D. 457, 464 (E.D. Pa. 2000) (granting class certification and stating, "given the nature of an ERISA claim which authorizes plan-wide relief, there is a risk that failure to certify the class would leave future plaintiffs without relief. There is also risk of inconsistent dispositions that would prejudice the Defendants") (citation omitted)).

In addition, the fundamental claims and defenses pertain to Defendants' conduct as fiduciaries, which are generally suitable for class treatment. *See* Rule 23(b)(1)(B) advisory committee's note. Thus, Rule 23(a)(2) is satisfied because there are questions of law or fact common to the Class.

### 3. Typicality

The claims or defenses of the representative parties are typical of the claims and defenses of the class. Under Rule 23(a)(3), "the claims or defenses of the

representative parties [shall be] typical of the claims or defenses of the class."

> Typicality determines whether a sufficient relationship exists between the
> injury to the named plaintiff and the conduct affecting the class, so that
> the court may properly attribute a collective nature to the challenged
> conduct. In other words, when such a relationship is shown, a plaintiff's
> injury arises from or is directly related to a wrong to the class, and that
> wrong includes the wrong to the plaintiff. Thus, a plaintiff's claim is typical
> if it arises from the same event or practice or course of conduct that gives
> rise to the claims of other class members, and if his or her claims are
> based on the same legal theory.

*In re Am. Med. Syss.,* 75 F.3d at 1082 (quoting Newberg, supra,§ 3-13 at 3-76 (footnote

omitted)). "The premise of the typicality requirement is simply stated: as goes the claim

of the named plaintiff, so go the claims of the class." *Sprague*, 133 F.3d at 399.

Differing degrees of injury among class members does not necessarily defeat

typicality if the basic injury each class member asserts is the same. *Bittinger v.*

*Techumseh Prods. Co.*, 123 F.3d 877, 885 (6th Cir. 1997). Likewise, typicality may be

found even if different defenses may apply to some class members. *Id.* at 884.

Here, the representative party's claims concerning their retirement account

arises from the same events, practices and course of conduct that gives rise to the

claims of the other Class Members. In addition, the representative party's claims are

based on the same legal theories as other Class Members.

In *IKON*, the court addressed numerous challenges to the typicality requirement.

191 F.R.D. at 465-66. After finding defendants acted uniformly, the court held that the

named representatives relied on a similar legal theory as the punitive class, even

though the parties may not have behaved identically in response to the alleged

breaches of fiduciary duty. *Id.*

Therefore, as in *IKON*, since the representative parties are stating the same

claim, concerning the same conduct and seeking the same relief as the Class Members, Rule 23(a)(3) is satisfied.

### 4. Adequacy of Representation

Rule 23(a)(4) requires "the representative parties will fairly and adequately protect the interests of the class." Due process demands this inasmuch as a final judgment will bind all class members. *In Re Am. Med. Syss.,* 75 F.3d at 1083.

To establish adequacy of representation, plaintiffs must satisfy two elements. First, the representative must have interests common with the unnamed members of the class. *Id.* Second, it must be shown that the representatives -- through qualified counsel -- will vigorously prosecute the interests of the class. *Id.*

Here, the first element is satisfied. The plan-wide nature of the relief sought by Plaintiffs unites their interests with those of absent Class Members. In addition, Plaintiffs and each Class Member have been damaged by the same alleged misconduct and, as a result, each has precisely the same interest in achieving the maximum recovery.

The second element is satisfied. Plaintiffs have shown that they are more than adequate representatives for the class. Plaintiffs' counsel are experienced in representing plaintiffs in ERISA and class action litigation generally. Moreover, the record indicates Plaintiffs' counsel vigorously and effectively pursued the interests of the Class.

Therefore, Rule 23(a)(4) is satisfied.

### B. Rule 23(b) Analysis

To be properly certified, a class action must satisfy each of the four requirements

of Rule 23(a) and must also pass at least one of the tests set forth in Rule 23(b).  Rule

23(b) provides:

> An action may be maintained as a class action if the prerequisites of
> subdivision (a) are satisfied, and in addition:
>
> (1)  the prosecution of separate actions by or against individual members
> of the class would create a risk of
>
> (A)  inconsistent or varying adjudications with respect to individual
> members of the class which would establish incompatible standards of
> conduct for the party opposing the class; or
>
> (B)  adjudications with respect to individual members of the class which
> would as a practical matter be dispositive of the interests of the other
> members not parties to the adjudications or substantially impair or impede
> their ability to protect their interests; or
>
> (2)  the party opposing the class has acted or refused to act on grounds
> generally applicable to the class, thereby making appropriate final
> injunctive relief or corresponding declaratory relief with respect to the
> class as a whole; or
>
> (3)  the court finds that the questions of law or fact common to the
> members of the class predominate over any questions affecting only
> individual members, and that a class action is superior to other methods
> for the fair and efficient adjudication of the controversy.  The matters
> pertinent to the findings include:  (A)  the interest of members of the class
> in individually controlling the prosecution or defense of separate actions;
> (B) the extent and nature of any litigation concerning the controversy
> already commenced by or against members of the class; (C) the
> desirability or undesirability of concentrating the litigation of the claims in
> the particular forum; (D) the difficulties likely to be encountered in the
> management of a class action.

Fed. R. Civ. P. 23(b).

Rule 23(b)(1)(A) "considers possible prejudice to the [d]efendants while

23(b)(1)(B) looks to possible prejudice to the putative class members." *IKON*, 191

F.R.D. at 466.  Here, Plaintiffs' ERISA claims will, as a practical matter, adjudicate the

interests of all plan participants.  If this case was adjudicated individually and relief was

granted in some actions but denied in others, the conflicting declaratory and injunctive relief could make compliance impossible for Defendants. Thus, certification under Rules 23(b)(1)(A) and (B) is appropriate.

Certification is also appropriate pursuant to Rule 23(b)(2) because all Plaintiffs' ERISA claims are based on conduct by Defendants that is "generally applicable to the class." Rule 23(b)(2). Plaintiffs allege that Defendants breached their fiduciary duties to the Class by failing to follow the provisions of the Plans, failing to insure that Broadwing stock was a prudent investment for the Plans, failing to monitor the Plans' fiduciaries, and failing to disclose material information regarding the value of Broadwing stock to the Plans' participants. This conduct affected all Plan participants and beneficiaries and, thus, class certification under Rule 23(b)(2) is appropriate because it cannot reasonably be disputed that the conduct was "generally applicable to the class." Rule 23(b)(2).

For the above reasons, the Courts grants plaintiffs' motion to approve the settlement class. The Court hereby approves the maintenance of the Action as a class action pursuant to Fed. R. Civ. P. Rule 23(a), 23(b)(1) and (b)(2), with the Class being defined as follows:

> All participants and beneficiaries of the Cincinnati Bell Inc. Savings and Security Plan and the Cincinnati Bell Retirement Savings Plan (known as the Broadwing Retirement Savings Plan from August 31, 2001 to July 24, 2003), and any predecessor plan, who held shares or units of the Cincinnati Bell Inc. Common Stock Fund or for whose benefit the Plans held shares of the Broadwing Inc. or Cincinnati Bell Inc. common stock at any time from November 9, 1999 through February 28, 2003 (the "Relevant Period"). Excluded from the Class are the Court, the Defendants, members of their immediate families, their legal representatives, heirs, successors or assigns, and any entity in which Defendants have had a controlling interest.

### III. Attorneys' Fees, Costs, and Incentive Payments

The Court conducted a hearing on this matter on June 22, 2006.  On the basis of that hearing, and plaintiffs' motion and supporting materials, the Court finds as follows:

Plaintiffs' Counsel achieved a proposed Settlement that provides for the immediate recovery of $11,000,000.00, in cash, plus interest (the "Settlement Fund"). There were no objections filed to the proposed settlement, to the request for attorneys fees and costs, nor to the request for payments to the Class Representatives.  The Independent ERISA Fiduciary, required to review the settlement under Department of Labor procedures, likewise, has not objected to the settlement, nor to the attorneys fees amount requested.

As noted above, the Class will recover a substantial portion of the damages they suffered without further delay or risk.  The Settlement is the result of arm's-length negotiations by experienced counsel.  The Settlement was presented to this Court for final approval only after Plaintiffs' Counsel determined that the settlement was in the Class's best interests.

This action was undertaken and prosecuted on a wholly contingent basis. Plaintiffs' Counsel have requested that the Court award attorneys fees on a common fund basis in the amount of 23% of the Settlement Fund, or $2,530,000.00, plus accrued interest.  Plaintiffs' Counsel also seek reimbursement of $99,801.36 in litigation expenses which they reasonably and necessarily incurred,[2] and modest incentive

---

2 These costs are separate from the expense of providing notice to the class and a professional claims administrator.  These expenses will be reviewed by the Court at a later time as provided in the Settlement Agreement and Release (¶ 7(d)).

payments of $ 5,000 to each of the two Class Represenatives and reimbursement of these individual's personal costs of the case.

The Court must ensure that class counsel are fairly compensated for the amount of work done and the results achieved. *Rawlings* v. *Prudential-Bache Props, Inc.,* 9 F.3d 513, 516 (6th Cir. 1993). The core inquiry is whether an award is reasonable under the circumstances. *Id.* at 517. Absent adequate compensation, counsel will not be willing to undertake the risk of common fund class action litigation. Counsel who create a common fund for the benefit of a class are entitled to a payment of fees and expenses from the fund relative to the benefit achieved. *Smillie v. Park Chern. Co.,* 710 F.2d 271, 275 (6th Cir. 1983); *Ramey v. Cincinnati Enquirer, Inc.,* 508 F.2d 1188 (6th Cir. 1974).

The Court's function is to determine what the lawyer would receive in the market and to compensate counsel at the fair market value. *Revco Securities Litigation, Arsam Co. v. Saloman Brothers, Inc.*, 1992 U.S. Dist. LEXIS 7852 *10, 12 (N.D. Ohio, May 6, 1992) (citing *inter alia, Louisville Black Police Officers Organization v. City of Louisville*, 700 F.2d 268, 277 (6th Cir. 1983)). The 23% percentage requested here is reasonable and appropriate in light of prevailing market rates and well below the 1/3 contingent fee percentages common in contingent fee plaintiffs' litigation.

Where Counsel's efforts create a substantial common fund for the benefit of the Class, they are, therefore, entitled to payment from the fund based on a percentage of that fund. *Brotherton v. Cleveland,* 141 F. Supp. 2d 907, 909 (S.D. Ohio 2001); *Basile v. Merrill Lynch, Pierce, Fenner, & Smith, Inc.,* 640 F. Supp. 697 (S.D. Ohio 1986) (citing *Boeing v. Van Gemert,* 444 U.S. 472, 478 (1980); *Mills v. Elec. Auto-Lite Co.,*

396 U.S. 375 (1970)); *See Blum v. Stenson,* 465 U.S. 886, 900 n.16 (1984); *Century. R.R. & Banking Co. v. Pettus,* 113 U.S. 116, 126 (1885). This "allows a Court to prevent...inequity by assessing attorneys' fees against the entire fund, thus spreading fees proportionately among those benefited by the suit." *Boeing,* 444 U.S. at 478.

The common fund fee award sought here is 23% of the total $ 11,000,000 recovery. The 23% share is comparable to, and indeed, well below the percentage of the recovery approved in similar cases. *Robinson v. Ford Motor Co.,* 2005 U.S. Dist. LEXIS 12071*6 (S.D. Ohio 2005); *Accord, New England Employees Pension Fund v. Fruit of the Loom,* 2006 U.S. Dist. LEXIS 11241*23-25 (W.D. Ky., March 17, 2006) (25% awarded, amounting to a 1.43 multiplier); *See, e.g., In re Telectronics Pacing Sys., Inc.,* 137 F. Supp. 1029 (S.D. Ohio 2001) (27% plus expenses); *In re Nord Res. Corp. Sec. Litig.,* No. C-3-90-380 (S.D. Ohio Dec. 9, 1994) (30% plus expenses); *In re Structural Dynamics Research Corp. Securities Litigation,* No. C-I-94-630 (S.D. Ohio Mar. 22, 1996) (30% including expenses); *In re Cincinnati Microwave, Inc. Securities. Litigation,* No. C-I-95-905 (S.D. Ohio Mar. 21, 1997) (30% plus expenses); *In re Valley Sys. Securities Litigation,* No. 5:92-CV2124, (Bell, J.) (N.D. Ohio March 16, 1994) (30% plus expenses). Attorneys fees awards typically range from 20 to 50 percent of the common fund. *Brotherton,* 141 F. Supp. 2d at 910; *In re Telectronics,* 137 F. Supp. 2d at 1046 ("the range of reasonableness has been designated as between twenty to fifty percent of the common fund"); *In re S. Ohio Corr. Facility,* 173 F.R.D. 205, 217 (S.D. Ohio 1997), *rev'd on other grounds,* 24 Fed. Appx. 520 (6th Cir. 2001) ("[t]ypically, the percentage awarded ranges from 20 to 50 percent of the common fund"); *See Kogan v. AIMCO Fox Chase, L.P.,* 193 F.R.D. 496, 503 (E.D. Mich. 2000) (1/3 ); *In re Cincinnati*

*Gas & Elec.,* 643 F. Supp. 148, 150 (S.D. Ohio 1986); *In re Cincinnati Microwave,* No. C-1-95-905 (30% plus expenses); *Howes v. Atkins,* 668 F. Supp. 1021 (E.D. Ky. 1987) (40%); *Adams v. Standard Knitting Mills, Inc.,* [1978 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶ 96,377 (E.D. Tenn. Jan. 6, 1978) (35.8%).

While a Court may award a fee based upon the hours expended, hourly rates of the attorneys involved, and a multiplier to take into account the case's contingency, in the Southern District of Ohio, the preferred method is to award a reasonable percentage of the fund, with reference to the lodestar and the resulting multiplier. *In re Telectronics Pacing Sys., Inc.,* 186 F.R.D. 459, 483 (S.D. Ohio 1999), *rev'd on other grounds,* 221 F.3d 870 (6th Cir. 2000); *See, Brotherton v. Cleveland,* 141 F. Supp. 2d 907, 910 (S.D. Ohio 2001) (Spiegel, S.J.). The percentage of the fund is the preferred method in this ERISA case, as it most closely approximates how lawyers are paid in the private market and incentivizes lawyers to maximize the Class recovery, but in an efficient manner.

To compensate for the delay Plaintiffs' Counsel encountered in receiving compensation, it is appropriate to use current fee rates in calculating the lodestar. *See Missouri* v. *Jenkins,* 491 U.S. 174, 283-84 (1989) (current rates, rather than historical rates applied to compensate for the delay in payment); *Basile v. Merrill Lynch*, 640 F. Supp. 697, 703 & n. 7.

In this Circuit, the lodestar figure is used to confirm the reasonableness of the percentage of the fund award. *Bowling*, 102 F.3d 777, 780 (6th Cir. 1996). Plaintiffs' Counsel who principally worked on this case expended over 4,000 hours in its prosecution. Based on their current rates, their combined lodestar is approximately

$1,584,079.00.   They have also submitted the Declarations of two leading members of

the bar, Paul Tobias, Esq., the founder of the National Employment Lawyers

Association, and Randolph Freking, the senior partner in Cincinnati's largest plaintiffs'

employment lawyers firm, both experienced in employment litigation.   These attorneys'

Declarations establish the reasonableness of these rates and that they are consistent

with their training, background, experience and skill. *Louisville Black Police Officers*

*Organization, Inc. v. Louisville*, 700 F.2d 268, (6th Cit. 1983) (citing *Northcross v. Board*

*of Education of Memphis City Schools,* 611 F.2d 624, 638 (6th Cir. 1979), *cert. denied,*

447 U.S. 911 (1980)).

While determination of the fee based upon the common fund percentage

approach is most appropriate here, the fee requested, if calculated by the lodestar plus

multiplier method, would result in a multiplier of 1.6 times the lodestar. A multiplier of

between approximately 2.0 and 5.0 existed in the fee awards in this District in *Basile v.*

*Merrill Lynch* and *Brotherton v. Cleveland*, further confirming the reasonableness of the

23% common fund requested.

In *Ramey v. v. Cincinnati Enquirer, Inc.,* the Sixth Circuit identified six factors for

consideration in determining the reasonableness of a fee award:

1.    The value of the benefit rendered to the class;

2.    Society's stake in rewarding attorneys who produce such
      benefits in order to maintain an incentive to others;

3.    Whether the services were undertaken on a contingent fee basis;

4.    The value of the services on an hourly basis;

5.    The complexity of the litigation; and,

    6.    The professional skill and standing of counsel on both sides.

508 F.2d 1188, 1196 (6th Cir. 1974); *See also Smillie* v. *Park Chem. Co.,* 710 F.2d 271,

275 (6th Cir. 1983).

    A review of the *Ramey* factors also supports the Plaintiffs' fee request as being

fair and reasonable.  Plaintiffs secured a substantial benefit for the class and there is a

public interest in ensuring that attorneys willing to represent employees in ERISA

litigation are adequately paid so that they and others like them will continue to take on

such cases. Adequately compensatory fee awards in successful class actions promote

private enforcement of and compliance with important areas of federal law. *See,*

*Bateman Eichler, Hill Richards, Inc. v. Berner,* 472 U.S. 299, 310 (1985).  Protecting

retirement funds of workers is of genuine public interest and, thus, supports a fully

compensatory fee award.  A fee that exceeds the lodestar is also important here to

compensate Counsel for the risk they undertook of no payment if the case was

unsuccessful. *See, e.g., Crosby v. Bowater Inc. Ret. Plan for Salaried Employees of*

*Great N. Paper, Inc.,* 262 F. Supp. 2d 804, 814 (W.D. Mich. 2003) ("contingency serves

to justify the high fees"; also noting that "the appearance of Plaintiff's counsel in this

case precluded Plaintiff's counsel from engaging in other lucrative work") (citation

omitted). As stated in *City of Detroit v. Grinnell,* 495 F.2d 448,471 (2d Cir. 1974):

"[P]erhaps the foremost of these factors [justifying a multiplier] is...the fact that,

despitethe most vigorous and competent efforts, success is never guaranteed." *Accord*

*Ramey,* 508 F. 2d at *1197*; *Basile v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 640 F.

Supp. at 702.

    An ERISA case involves highly-specialized and complex areas of law. The type

of claims brought here, breaches of duty by the Plan's fiduciaries, are based on rapidly evolving legal theories. There are significant conflicts between the approaches adopted by different trial courts and appellate courts and most law in this area was decided after this case was filed. Plaintiffs' Counsel are nationally known leaders in the fields of ERISA, class action and complex litigation and their law firms have a notable record in national and class litigation. See, Declarations of Counsel and resumes. These lawyers vigorously defended their clients against worthy opponents in one of the regions's largest law firms.

Plaintiffs' Counsel have unreimbursed expenses of $ 99,801.36. The expenses are summarized by category in the Connor Declaration and detailed in the respective time and billing records of Plaintiffs' Counsel. They are reasonable and necessary expenses, including photocopying, postage, travel, lodging, filing fees and Pacer expenses, long distance telephone, telecopier, computer database research, depositions expenses, and expert fees and expenses.

The Court finds appropriate the requested payment to the two Class Representatives, Kevin Streckfuss and Kathleen Kurtz, for their efforts in this case, in a very modest amount of $ 5,000 each, plus an award from the Fund of out of pocket expenses they incurred (copies, parking, mileage, postage, not to exceed $ 1,000 each), to be paid by Plaintiffs' Counsel from the amount reserved for administration of the Fund in the Settlement. These two Plaintiffs located willing counsel, initiated lawsuits, and invested their own time, effort, and funds (in the form of unreimbursed expenses) for the benefit of the Class. Plaintiffs Streckfuss and Kurtz were deposed at length. Their initiative, time, and effort were essential to the successful prosecution of

the case and resulted in a significant recovery for the Class. Indeed, several other named plaintiffs were either not willing or able to serve as Class Representatives, making the contributions of Mr. Streckfuss and Mrs. Kurtz even more significant.

Plaintiffs' Counsel and the Class Representatives are also entitled to interest on their awards and payments, proportional to and on the same conditions and at the same rate as that which is being earned by the Class, starting from the date of deposit of the funds in the Settlement Fund escrow account on or about April 16, 2006.

Accordingly, this Court awards Plaintiffs' Counsel $2,530,000.00 in attorneys fees and $99,801.36 in litigation expenses, plus accrued interest on these amounts. Named Class Representatives Streckfuss and Kurtz are also granted a payment of $5,000 each, plus reimbursement of their individual's personal costs of the case, not to exceed $1,000 each.

### IV. Disposition

For the foregoing reasons, the Court **GRANTS** Plaintiffs' Motion for Final Approval of Proposed Settlement and Final Certification of the Class (Doc. 115-1) and Plaintiffs' Motion for Order Awarding Attorneys' Fees and Costs and Incentive Payments to Class Representatives (Doc. 110).

Based on the above, and the Settlement Agreement, the Court **ORDERS, ADJUDGES AND DECREES** as follows:

1.　　The Court hereby dismisses the Complaints and the Action against the Defendants with prejudice on the merits, and without taxation of costs in favor of or against any party.

2.      As of the date of Final Approval of Settlement (as defined in the

Agreement), the Plaintiffs, the Plans, and each member of the Class on

their own behalf and on behalf of their respective heirs, executors,

administrators, past and present partners, officers, directors, agents,

attorneys, predecessors, and assigns, shall have released each and all of

the Released Persons from the Released Claims, and the Defendants

shall be deemed to have released the Plaintiffs, the Settlement Class, and

Class Counsel from the Released Claims, in accordance with the terms of

the Agreement.

3.      The Plaintiffs, the Plans, the Plans' fiduciaries, and all members of the

Settlement Class are hereby permanently barred and enjoined from

instituting or prosecuting, either directly, indirectly or in a representative

capacity, any other action in any court asserting any and all Released

Claims against any and all Released Persons.  Defendants are hereby

permanently barred and enjoined from instituting or prosecuting, either

directly, indirectly, or in a representative capacity, any other action in any

court asserting any and all Released Claims against Plaintiffs, the

Settlement Class, and Class Counsel.

4.      All parties are hereby permanently barred and enjoined from the institution

and prosecution, either directly or indirectly, of any actions against any

Defendants, their Related Parties, Defendants' Counsel, any member of

the Settlement Class, or Class Counsel based on the amount of any

Settlement Claim issued pursuant to the Plan of Allocation approved in

the Final Approval of the Settlement.

5.     The Court hereby decrees that neither the Agreement nor the Settlement nor this Order is an admission or concession by any Defendant of any liability or wrongdoing. This Order is not a finding of the validity or invalidity of any of the claims asserted or defenses raised in this Action. Neither the Agreement nor the Settlement nor the Order and Final Judgment nor the settlement proceedings nor the settlement negotiations nor any related documents shall be offered or received in evidence as an admission, concession, presumption, or inference against any Defendant in any proceeding, other than such proceedings as may be necessary to enforce or consummate the Agreement or to establish that such Order and Final Judgment was entered in this case.

6.     Except as otherwise provided herein or in the Agreement, each party shall bear its own fees, expenses, and costs. Class Counsel shall allocate the award of attorneys' fees among counsel for the Class based on their good-faith assessment of the contribution of such counsel to the prosecution of this Action.

7.     Without affecting the finality of this Order, the Court retains jurisdiction for purposes of implementing the Agreement and reserves the power to enter additional orders to effectuate the fair and orderly administration and consummation of the Agreement and Settlement, as may from time to time be appropriate, and resolution of any and all disputes arising thereunder.

The Clerk shall enter a final judgment in this case, approving the $11,000,000 Class Settlement, certifying the Settlement Class as provided above, and awarding $2,530,000.00 in attorneys fees and $99,801.36 in litigation expenses to Plaintiffs' Counsel, plus accrued interest on these amounts, and granting Named Class Representatives Streckfuss and Kurtz a payment of $ 5,000 each, plus reimbursement of their individual personal costs of the case, not to exceed $ 1,000 each.

The Clerk shall dismiss the Complaints and this Action in their entirety with prejudice on the merits and without taxation of costs in favor of or against any party.

The Clerk shall remove Doc. 115 and Doc. 110 from the Court's pending CJRA motions list.

**IT IS SO ORDERED.**

**MICHAEL H. WATSON, JUDGE**
**UNITED STATES DISTRICT COURT**